UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TIMOTHY ANDREW CRANE,

               Plaintiff,

v.

CHAD PALMITER et al.,

               Defendants.

_____/

Case No. 1:24-cv-371

Honorable Ray Kent

## <u>OPINION</u>

This is a civil rights action brought by a federal pretrial detainee under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Palmiter and Mendham.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated at the Newaygo County Jail, White Cloud, Michigan. Plaintiff has a pending criminal case in this court. *See USA v. Crane*, Case No. 1:23-cr-85 (W.D. Mich.). The events about which he complains occurred at the Newaygo County Jail. Plaintiff sues Defendants Newaygo County Undersheriff Chad Palmiter, Newaygo County Sheriff Robert Mendham, and Corrections Officers Brandon Sajak and Unknown Party #1 in their individual and official capacities.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In his amended complaint, Plaintiff alleges that he arrived at the jail on or about February 4, 2024. On March 3, 2024, while Plaintiff was walking away from the medication cart, several officers, including Defendant Sajak and Defendant Unknown Party #1 grabbed Plaintiff from behind, yanking him off balance and into the wall. (ECF No. 7, PageID.23.)

Defendant Sajak began to twist Plaintiff's left arm behind his back and various other officers began to give Plaintiff contradicting directives, while telling him to stop resisting. Defendant Sajak then lifted Plaintiff's cuffed arms behind his back, while yelling and cursing at Plaintiff. Defendant Sajak walked Plaintiff to the holding tanks where the handcuffs were removed and the door was closed. (*Id.*)

Plaintiff remained in the holding tank for seven hours, at which point he began to yell and knock on the door. Defendant Sajak came to the holding tank and told Plaintiff to "shut the f**k up and stop knocking." (*Id.*) Plaintiff protested that he had been in the tank for seven hours and Defendant Sajak opened the slot in the door and sprayed Plaintiff in the face with pepper spray. Defendant Sajak said, "That'll shut you up," and slammed the food slot closed. (*Id.*) Plaintiff states that he is asthmatic and after being sprayed, he yelled to Defendant Sajak that he needed his inhaler and a nurse. Defendant Sajak said that if Plaintiff could yell, he was fine. (*Id.*) About an hour later, Plaintiff was seen by a nurse, but was not given his inhaler. Plaintiff was taken to segregation but states that he did not receive a written misconduct. (*Id.*)

On March 10, 2024, Plaintiff kited Defendant Mendham about being placed in segregation without a written misconduct or a hearing. Plaintiff did not receive a response to his kite. (*Id.*, PageID.24.) On March 17, 2024, Plaintiff kited Defendant Palmiter regarding his placement in segregation and his commissary and electronic cigarette restriction. Plaintiff did not receive a

response. (*Id.*, PageID.25.) On April 4, 2024, Plaintiff filed a grievance, but Deputy Z determined it to be unresolvable. (*Id.*)

Plaintiff claims that Defendants Mendham and Palmiter failed to ensure that he received a hearing and or the opportunity to present a defense in violation of his Fourteenth Amendment right to due process. Plaintiff notes that any reference to the incident in his presentence investigation report could cause an increase in his criminal sentence. (*Id.*)

Plaintiff claims that Defendants Sajak and Unknown Party #1 used excessive force against him in violation of the Eighth Amendment, which resulted in an injury to Plaintiff's shoulder. Plaintiff states that he continues to have pain from this injury. (*Id.*, PageID.25-26.)

Plaintiff seeks damages and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Due Process

Plaintiff claims that Defendants Palmiter and Mendham denied him due process by failing to provide him with a misconduct hearing on the alleged rule infraction, which deprived Plaintiff of the opportunity to defend himself at a formal hearing. Plaintiff claims that he was also denied the right to present witnesses in his defense. As a result of his alleged rule infraction, Plaintiff was placed in segregation and was given a commissary and electronic cigarette restriction. Plaintiff does not specify the length of these restrictions.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a

protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Further, in *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Additionally, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be held in a specific security classification. *See id.* at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29.

Plaintiff suggests that the determination of guilt with regard to the misconduct will show up in his presentence investigation report and cause an increase in his criminal sentence. (Compl.,

ECF No. 7, PageID.25.) That is not inevitable. Nothing in the federal sentencing guidelines compels the sentencing judge to increase a sentence because the convicted person was found guilty of misconducts during pretrial detention. Such misconducts might be relevant to the judge's exercise of discretion when imposing sentence, but an increase in duration is not inevitable. The Supreme Court has declined to afford due process protection to disciplinary proceedings where the chance that the determination of guilt will impact the duration of the sentence is so attenuated. *Sandin*, 515 U.S. at 487; *Meachum*, 427 U.S. at 229, n. 8.

Plaintiff might otherwise be entitled to due process protections if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones* , 155 F.3d at 811 (quoting *Sandin* , 515 U.S. at 483). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey*, 62 F.3d at 790-91 (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey*, 111 F.3d at 460 (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding).

Plaintiff has made no factual allegations to support a finding that his placement in segregation and the imposition of commissary and electronic cigarette restrictions was atypical or significant. The length of the placement is not determinative. *See Jones*, 155 F.3d at 812. Moreover, even if Plaintiff has been in segregation since his initial placement on March 3, 2024, it could only have continued for slightly more than three months. Moreover, the denial of

commissary and electronic cigarettes does not constitute an atypical and significant hardship. Because Plaintiff has failed to make any allegations that support a conclusion that the misconduct proceeding or that the conditions in segregation were "atypical and significant," his due process claims against Defendants Palmiter and Mendham are properly dismissed.

**B.      Excessive Force[2]**

Plaintiff claims that Defendants Sajak and Unknown Party #1 subjected him to excessive force. Excessive force claims can be resolved under the Fourth, Eighth and Fourteenth Amendments – the applicable amendment depends on the plaintiff's status at the time of the incident: a free citizen in the process of being arrested or seized; a convicted prisoner; or someone in "gray area[s]" around the two. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013); *Hopper v. Plummer*, 887 F.3d 744, 752–754 (6th Cir. 2018) (quoting *Burgess*). When a free citizen claims that a government actor used excessive force during the process of an arrest, seizure, or investigatory stop, we perform a Fourth Amendment inquiry into what was objectively "reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008). These Fourth Amendment protections extend through police booking until the completion of a probable cause hearing. *Aldini v. Johnson*, 609 F.3d 858, 866-67 (6th Cir. 2010).

---

[2] Plaintiff mentions that he suffers from asthma. (Am. Compl., ECF No. 7, PageID.24.) He also states that after he was sprayed with pepper spray he yelled to Defendant Sajak that Plaintiff wanted his inhaler and to be seen by a nurse. Sajak declined stating that "if you can yell out to me you can breath[e], you['re] fine." (*Id.*) Plaintiff notes that he was seen by a nurse an hour later, but did not receive his inhaler. (*Id.*) Liberally construed, those scant allegations might provide some foundation for a claim that Sajak had recklessly disregarded Plaintiff's medical needs. *See, e.g., Brawner v. Scott Cnty., Tenn*., 14 F.4th 585, 596–97 (6th Cir. 2021). But to state such a claim, Plaintiff must allege facts to support an inference that he suffered "an objectively serious medical need . . . . " *Grote v. Kenton Cnty., Ky.*, 85 F.4th 397, 405 (6th Cir. 2023). Plaintiff does not specify any of the symptoms that he suffered at the time; he only states that he had an inhaler for exercise -induced asthma. Therefore, If Plaintiff intended to state a medical claim, he has failed.

When convicted prisoners bring claims of excessive force, we turn to the Eighth Amendment, which forbids the "unnecessary and wanton infliction of pain" that constitutes "cruel and unusual punishment," and specifically conduct that is malicious and sadistic. *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *United States v. Budd*, 496 F.3d 517, 531- 32 (6th Cir. 2007).

Plaintiff was neither a free citizen nor a convicted prisoner at the time force was used against him; as a pretrial detainee, he falls into the grey area in between. In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that the use of excessive force on pretrial detainees is measured under the Due Process Clause of the Fourteenth Amendment. The Court rejected a subjective standard, holding that the relevant inquiry is whether the force purposely or knowingly used against the prisoner was objectively unreasonable. *Id.* at 398; *see also Coley v. Lucas Cnty.*, 799 F.3d 530, 538 (6th Cir. 2015) (citing *Kingsley*).

In this case, Plaintiff alleges that on March 3, 2024, without any provocation, Defendant Sajak and Defendant Unknown Party #1 grabbed Plaintiff from behind, yanked him off balance, and pushed him into a wall. (ECF No. 7, PageID.23.) Defendant Sajak began to twist Plaintiff's left arm behind his back and various other officers began to give Plaintiff contradicting directives, while telling him to stop resisting. Defendant Sajak then lifted Plaintiff's cuffed arms behind his back and placed him in a holding tank for seven hours. After seven hours, Plaintiff began to yell and knock on the door. Defendant Sajak came to the holding tank and told Plaintiff to "shut the f**k up and stop knocking." (*Id.*) Plaintiff protested that he had been in the tank for seven hours and Defendant Sajak opened the slot in the door and sprayed Plaintiff in the face with pepper spray. Defendant Sajak said, "That'll shut you up," and slammed the food slot closed. (*Id.*) Plaintiff states that he is asthmatic and after being sprayed, he yelled to Defendant Sajak that he needed his inhaler

and a nurse. Defendant Sajak said that if Plaintiff could yell, he was fine. (*Id.*) About an hour later, Plaintiff was seen by a nurse, but was not given his inhaler. (*Id.*)

Taking Plaintiff's factual allegations as true, as the Court is required to do, Plaintiff was grabbed roughly from behind without any provocation, was placed in cuffs, and was taken to a holding cell. When Plaintiff eventually protested, he was sprayed in the face with pepper spray. Therefore, although Plaintiff has by no means proven his claims, taking Plaintiff's factual allegations as true and in the light most favorable to him, at this time, the Court will not dismiss Plaintiff's excessive force claims against Defendants Sajak and Unknown Party #1.

To the extent that Plaintiff seeks to impose supervisory liability on Defendants Palmiter and Mendham for the use of excessive force by Defendants Sajak and Unknown Party #1, such claims lack merit. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Palmiter and Mendham had any involvement in the use of

force by Defendants Sajak and Unknown Party #1. Accordingly, he fails to state a claim against them.

## **<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Palmiter and Mendham will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's excessive force claims against Defendants Sajak and Unknown Party #1 remain in the case.

An order consistent with this opinion will be entered.


Dated:   June 21, 2024                                  /s/ Ray Kent
                                                        Ray Kent
                                                        United States Magistrate Judge